## CHATTEL MORTGAGEES SHOULD KNOW WITH WHOM THEY ARE DEALING.

Common Pleas Court of Franklin County.

JAMES A. BAKER v. ROY COFFMAN, ET AL.

Decided, July, 1922.

*Chattel Mortgages—Priority Lost by Issuance of Execution on a Judgment in Replevin for Money—Also, by Incorrect Signature of the Mortgagee—Office of the Recording Statutes.*

1. The owner of a senior chattel mortgage does not waive the priority of his lien by taking, in an action in replevin, a judgment for money and issuing execution thereon.

2. The dissimilarity in the names of Coffman and Kauffman is sufficient to give priority to a second chattel mortgage, given under the name of Roy Coffman, which was the real name of the mortgagor, over a first mortgage executed under the name of Roy Kauffman, where the holder of the first mortgage made no inquiry as to whether it was signed by the real or known name of the mortgagor, and the holder of the second mortgage had accepted it in good faith without notice.

*Hamilton & Kennedy,* for the plaintiff.
*Hogan & Hogan* for defendant.

SCARLETT, J.

The defendant, Roy Coffman, using the name of Roy Kauffman, purchased from and mortgaged to an auto sales company an automobile, which he subsequently mortgaged to plaintiff

under his right name of Coffman, but still using the christian name of Roy. The second mortgage was given for a valuable consideration to Baker, who was without actual notice of the first mortgage, and was both given and filed after a suit had been filed against Kauffman by the defendant investment company as assignee of the first mortgage, and after the auto was taken from and then returned to him on bond, but before the auto was seized on execution and held for sale by the sheriff, the completion of which it is one of the purposes of this suit to stop.

I agree with counsel for the investment company that there are only two questions involved:

1. "Whether the owner of the senior chattel mortgage waives the priority of his lien by taking a judgment in replevin for money and issuing execution thereon; and

2. "Whether the fact that said first mortgage was not executed in the real name of the defendant, Coffman, makes any material difference."

As he contends the first question is answered by the opinion of our Supreme Court in *Green* v. *Bass,* 83 O. S., 378, holding the priority not to be waived thereby.

To the solution of the second question I have given some time, examining the cases cited in the digests and finding the argument in none of them very sound or convincing. The differences in the statutes as affecting the decisions in other states, has added another confusing feature.

It is well settled that an incorrect or wrong signature will not invalidate a written mortgage as between the parties, because at common law a chattel mortgage could be created by parol. It is upon the general validity of such an execution that the defendants seem to rely as shown by their citation of 11 C. J., 477. The real question, however, arises under recording statutes, which were enacted for the protection of subsequent purchasers, mortgagees and other lien holders. As stated in 5 R. C. L. p. 393:

"An error in the signature of the mortgage is not fatal as between the parties, but under the recording statutes it would vitiate the mortgage as to third persons."

The direct answer to the question presented is thus stated in 11 C. J., 540:

"Likewise by the weight of authority, the record of a mortgage executed by the owner in a wrong or fictitious name is not constructive notice to anyone dealing with the owner in his true name, although the contrary has been held."

Then follows the statement that the use of a name, which was adopted or acquired by usage, and by which the person was generally known in the community, is proper and a chattel mortgage so signed and filed is constructive notice to a subsequent mortgagor taking a mortgage from the same person under another name, by which he was also known.

No other rule is consistent with the purpose of our recording statutes. A mortgagee, who permits the mortgagor to remain in possession of the property mortgaged and thereby makes it possible for the latter to deceive or mislead others by this strongest proof of ownership, must comply with the letter and spirit of the statute. Our Ohio statute is more severe than many, in that it provides that a chattel mortgage, not filed in the manner required by statute, shall be absolutely void as to subsequent purchasers and mortgagees. To validate his mortgage lien it is the duty of the mortgagee to see that the mortgage is real and not fictitious, that it is signed by the real or known name of the mortgagor, and will give the notice which the statute contemplates. It might properly be argued that by filing the mortgage, or causing it to be filed, to gain the benefit of the statute, he impliedly guarantees its *bona fide* character, and is estopped, as against subsequent purchasers and mortgagees without notice, from claiming it as the act of a person bearing another name.

It follows that one selling property, or advancing money on a chattel mortgage should know with whom he deals. There is too much inclination to laxity in this regard. Certainly in such cases natural equity favors the subsequent purchaser or mortgagee.

The first mortgagee by proper investigation can always determine the real or known name of the proposed mortgagor, or

if he can not, that fact should arouse his suspicions and cause him to refuse the proposed transaction until he has been furnished proper proof. On the other hand every investigation a subsequent mortgagee could reasonably be expected to make, namely, the real and known name of the other, his long residence in the community, his notorious possession of the property, and the examination of the indices of the recorder's office and even the names of the mortgages, would not reveal the fact that the owner had secretly and fraudulently executed a mortgage in a fictitious name.

The two names, Coffman and Kauffman are very similar in sound, but to the eye they are very dissimilar: Note the first three letters of each word, the ones necessarily used in examining the recorder's indices. The agreed statement of facts, which in a case such as this is unsatisfactory, merely stipulates that the right name is Roy Coffman, and that plaintiff had no actual knowledge of the mortgage under the name of Kauffman. For the reasons stated he could have no constructive knowledge. On the other hand there is no fact stated upon which reasonable care upon defendant's part, or negligence upon plaintiffs, can be predicated. There is no claim of an investigation, at the time of the sale, or that the spelling "Kauffman" was sometimes used by Coffman, or his family.

In making this last suggestion I have in mind the rule as stated by Black on Judgments, as follows:

"The purport of the decisions appears to be that a sufficient degree of accuracy is attained, if an intending purchaser, exercising a reasonable degree of care and a reasonable amount of intelligence in making a search, could not fail to be apprised of the existence and character of the judgment." (1 Black on Judgments, Sec. 406.)

Citing the above rule, the Supreme Court of Nebraska held that a judgment against May Alley was not constructive notice to a purchaser from Mary Ann Allely, although the deed was signed Mary Alley, the body of deed containing the right name (*Phillips* v. *McKaig & Co.*, 36 Neb., 853.)

In *Johnson* v. *Wilson & Co.*, 137 Ala. 468, it was held that "the recordation of a mortgage executed in the name of 'A. W. Dixon' constituted no notice that 'J. W. Dixon,' which was the real name of the mortgagor, executing such mortgage." In reaching a similar conclusion, the Supreme Court of Wisconsin made this statement of an underlying reason: "A chattel mortgage is not effectually recorded where the instrument is executed under a fictitious or false name" (*Mackey* v. *Cole*, 79 Wisc., 426).

In *National Bank* v. *Mercantile Co.*, 169 Ala., 476, 32 L.R.A., N.S., 243, it was held that "a mistake in the middle initial of a name signed to a chattel mortgage by one whose business signature consists of his surname and initials destroys the efficacy of its record as against subsequent *bona fide* purchasers." In *Prouty* v. *Marshall*, 225, Pa., 570, 25 L. R. A. N.S., 1211, a change of the initials of the mortgagor from L. J. to S. J. was held to relieve a subsequent purchaser without notice from the liability of the mortgage.

Other cases might be cited and they may be found under notes in the L R. A. volumes above cited. I have found one case which directly sustains defendant's contention, and that case holds in effect that recordation of a mortgage made under an assumed name is constructive notice to a subsequent purchaser (*Brox* v. *Graves*, 25 Neb., 453, 456.) The California case is not in point, because the first deed was under grantor's real name, Jeremiah Fallon, and was properly recorded, while in the second his nick name, under which property was originally conveyed to him, was used. The first purchaser was not at fault, but the second was in not ascertaining the real name of grantor, and the record gave constructive notice as it was not a fictitious or assumed name but of the real name. *Fallon* v. *Kaboe*, 38 Cal., 44.

So also of the Missouri case cited, 97 Mo. App., 219, wherein the mortgage was executed by the owner of the property under the name of Echo Publg. Co., the business name he had adopted, which the subsequent judgment creditor well knew. At page 224 it is said:

"It is undoubtedly the law that a chattel mortgage executed by the owner of property under a fictitious name is not notice to a *bona fide* purchaser of the property from the owner selling under his true name."

If the case *Hobday* v. *Sands*, 24 C. C. N. S., 286, is in point, which I do not believe because there was evidence that the name used in the first mortgage was the real name or a slighter variation therefrom than in the present case (a difference in the third and fourth letters), it is not supported by the cases cited and relied on (except the Nebraska case) and particularly *Jennings* v. *Hood*, 20 O., 261.

Upon the facts agreed upon, the plaintiff's lien under the second mortgage is entitled to priority over the investment company's lien under its first mortgage and judgment. Of course, the suit against "Kauffman," for the reasons given above, did not give constructive notice; and the lien of the levy, made after judgment and subsequent to the filing of the second mortgage, is inferior to the latter. Let me observe, also that I have paid no attention to the christian name, Roy v. Ray, because I believe the record of one, if it were the only difference in the name, would be constructive notice of the other, sufficient at least to require investigation by a subsequent purchaser or mortgagee.

The form of the action and the relief sought has not been questioned by counsel, and under the facts of this case probably can not be. Let the entry declare a personal judgment, as prayed for, an order of foreclosure and sale, the proceeds to be applied in accordance with the above finding. The injunction against the sheriff will, of course, be made permanent. I assume that the automobile is held by the investment company subject to the order of the court, and was not taken from the sheriff with any intent of obstructing the administration of justice.